IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IRENE ESQUIBEL,

          Plaintiff,

vs.                                                    CIVIL NO. 09-235 LH/LFG

JOHN Q. HAMMONS HOTELS
MANAGEMENT, LLC, dba
Embassy Suites Hotel,

          Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO COMPEL IME

THIS MATTER is before the Court on Defendant John Q. Hammons Hotels Management, LLC, d/b/a Embassy Suites Hotel's Motion to Compel IME [Doc. 31]. The motion is opposed. The Court considered the motion and response [Doc. 33]. No reply is necessary.

### Background

Plaintiff Irene Esquibel ("Esquibel") brings this action seeking damages for negligence and personal injury arising from an incident in which Defendant's banquet server dropped a platter or tray, striking Esquibel. She contends that Defendant owed her a duty of reasonable care; that it breached the duty; that it was foreseeable that harm would result from the breach of the duty; and, that as result of the breach, she "was injured physically and suffered emotional distress from being unable to return to her regular duties at work due to pain and loss of motion in her right shoulder and arm." [Doc. 1, Ex. A, Complaint, p. 1-2, ¶ 5].

Esquibel further asserts she "incurred the expense of reasonable and necessary medical and related care, the inability to engage in normal family, social, recreational, household and wage-earning activities, and the loss of enjoyment of life, pain and suffering, now and in the future, all to

[her] damage . . . ." [Doc. 1, Ex. A, Complaint, p. 2, ¶ 7].   The injury alleged by Esquibel is serious.  Indeed, defense counsel notes:

> Dr. Reyna [Esquibel's physician] testified during his deposition that Plaintiff is a reasonable surgical candidate for an anterior cervical discectomy and fusion from C4-5 to C6-7 to correct degenerative disc disease and C6 radiculopathy.  Dr. Reyna also testified that Plaintiff should not return to work and Plaintiff is not at maximum medical improvement.

[Doc. 31, Motion, p. 2, ¶ 9].

Because Esquibel's physical condition is at issue, Defendant sought to schedule the independent physical examination of Esquibel by an orthopedic specialist, Dr. Claude D. Gelinas. In the course of business dealings in this litigation, defense counsel's assistant, Jennifer R. Cypert, e-mailed Esquibel's legal assistant, Randall Biggers to arrange for depositions and to handle other scheduling matters.

On October 14, 2009, Ms. Cypert e-mailed Mr. Biggers and stated, "Please let me know Ms. Esquibel's availability for October 26th or October 29th for an IME with Dr. Gelinas."  Mr. Biggers responded to this request by stating, "Irene is only available on Oct 26.  I told her you would send written notification and payment for mileage.  She reminded me that her son has to take off work to drive her."   [Doc. 31, Ext. A].  Upon receipt of the e-mail advising that Esquibel was available on October 26, final arrangements were made with Dr. Gelinas' office for the IME, and Ms. Cypert e-mailed Mr. Biggers as follows:

> Dr. Gelinas' office confirmed Ms. Esquibel's IME will be on October 26th at 3:15 p.m.  Dr. Gelinas' office will need Ms. Esquibel to check in at 3:00 pm.  Norma, the Dr.'s assistant, needs all her demographic information, DOB, SS, address, phone number.  Ms. Esquibel needs to hand carry the actual MRI films and CD.  Norma will send Ms. Esquibel paperwork to fill out prior to her appointment.
>
> Thank you for your assistance in this matter.

2

[Id.]

On October 16, Esquibel's counsel advised defense counsel that Esquibel would not agree to the IME, "because Dr. Berger had already conducted a physical I.M.E. of Plaintiff and a mental I.M.E. had been performed by Dr. Samuel Roll." [Doc. 33, Response, p. 2, ¶ 8].  Further, Esquibel argues that "Mr. Biggers of Plaintiff's counsel's office did not have authority to allow an I.M.E. to be conducted of Plaintiff," [Doc. 33, Response, p. 1, ¶ 4], and expressed surprise that those e-mail communications occurred between Esquibel's and defense counsel's office.  ("Plaintiff's counsel knew nothing of the emails that had been exchanged between Mr. Biggers and Ms. Cypert on October 15, 2009."). [Doc. 33, Response, p. 2, ¶ 6].

As a result of Esquibel's refusal to appear for the independent medical examination, it was necessary to vacate the date, which Dr. Gelinas set aside for the independent orthopedic examination of Esquibel.

## **Analysis**

In Steven Baicker-McKee, William M. Janssen & John B. Corr, Federal Civil Rules Handbook 766 (2008), the authors outline the purpose and scope of independent examinations under Rule 35:

> Rule 35 requires a party to submit to a mental or physical examination when the party's mental or physical condition is at issue in the action.  In contrast to most other discovery procedures, mental or physical examinations are available only for "good cause."

The authors also state, "In a tort action where the plaintiff seeks to recover for personal injuries, good cause will almost always be found to exist."  Id. at 768 (relying on Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964), and Houghton v. M & F Fishing, Inc., 198 F.R.D. 666, 668 (S.D. Cal. 2001).

It is abundantly clear that Esquibel placed her condition "in controversy" in this case. It is also clear that the claims advanced by Esquibel do not fall into the "garden variety" category as recognized by the Tenth Circuit in Thiessen v. General Electric Capital Corp., 178 F.R.D. 568, 570 (D. Kan. 1998), because she asserts particularized physical and emotional injuries, substantial damages and plans to present expert testimony in support of her damage claims.

In Thiessen, the court stated that when a plaintiff makes a "garden variety" claim which amounts to no more than an attempt to recover for generalized insult, hurt feelings or lingering resentment, a condition is not sufficiently "in controversy" to justify a Rule 35 examination. Id. at 569. However, when a plaintiff makes a particular claim for damage or injury or assert a more particularized physical, mental or emotional claim, the claimed condition is in controversy, and a defendant is entitled to conduct its own examination and evaluation of the claim. Id. *See also* Schlagenhauf, 379 U.S. at 119 (plaintiff who asserts mental or physical injury places that injury clearly in controversy and provides defendant with good cause for an examination to determine the existence and extent of such alleged injury).

Stated simply, a plaintiff may not assert a right to damages and yet deny the opposing party an opportunity to either confirm or challenge the legitimacy of the claim. That is exactly what is occurring here. In this case, Esquibel asserted a significant injury, one which she claims precludes her from returning to the workforce. She contends she must undergo serious and risky surgical procedures. Her Complaint alleges that the injury resulted in her "inability to engage in normal family, social, recreational, household and wage earning activities, and the loss of enjoyment of life, pain and suffering, now and in the future . . . ." [Doc. 1, Ex. A, Complaint, p. 2, ¶ 7]. Yet, she refuses to submit to an evaluation which could serve to confirm her claims and thus facilitate a resolution, or refute her claims and allow the disputed issues to be resolved by a fact finder. In the

4

face of these allegations and evidence that Esquibel's condition is at issue, it was inappropriate for Esquibel to refuse the IME.

As an aside, the Court is disappointed that Esquibel chose to place blame on a legal assistant, contending that there was no authority for the assistant to agree to the examination, and that it was a surprise to learn that e-mails from one legal assistant to the other were exchanged. The scheduling of depositions and independent evaluations is generally handled by a legal assistant, and earlier e-mails between the assistants indicates that the practice was routine. The real concern in this case likely arose from Esquibel's own reluctance to submit to another evaluation and her attorney's attempt to alleviate the client's concerns. Concern for a client is, of course, most important. However, when faced with responsibilities imposed by the rules of procedure, along with knowledge that Esquibel's back, neck and shoulders were allegedly injured, and considering that Esquibel initiated the lawsuit seeking substantial damages, Esquibel should not impose roadblocks in the way of Defendant's right to information.

Esquibel argues she would "consider" the request for an IME after receipt of a report from Dr. Berger. [Doc. 33, ¶ 10]. Again, this was improper. The Court imposed case management deadlines that allow Defendant only a brief period of time from receipt of a plaintiff's expert report within which to schedule, conduct and obtain a Rule 35 examination. Esquibel has no authority, under these circumstances, to not cooperate in scheduling the exam. If Esquibel believed that the request was inappropriate, she was obliged to seek sanctuary by way of Court order.

Moreover, the fact that other evaluations occurred provides no basis for refusing a reasonable request. After all, Esquibel seeks, in part, recompense for orthopedic injuries, and Defendant requests an orthopedic evaluation. The fact that other evaluations have taken place is of no import. The number of examinations to which a party may be subjected depends solely upon the

circumstances of the case. Shirsat v. Mutual Pharmaceutical Co., Inc., 169 F.R.D. 68, 72 (E.D. Pa. 1996). Even when earlier examinations have been ordered, subsequent exams are proper when the court deems it necessary. Lewis v. Neighbors Co., 49 F.R.D. 308, 209 (W.D. Mo. 1969). For example, in Marshall v. Peters, 31 F.R.D. 238, 239 (S.D. Ohio 1962), the plaintiff asserted orthopedic injuries which allegedly aggravated a heart condition. The court determined that it was entirely appropriate to order Rule 35 evaluations by an orthopedic specialist as well as by a heart specialist. So, too, here. Esquibel's injuries relate to, among other things, orthopedic medicine and the proposed IME is appropriate.

The Court concludes that the cancellation of the IME and the refusal to participate in the requested examination were unreasonable. The Court finds good cause to order the examination. The IME before Dr. Gelinas shall be rescheduled, and Esquibel is ordered to submit to the evaluation.

IT IS SO ORDERED.

                        *Lorenzo F. Garcia*
                        Lorenzo F. Garcia
                        United States Magistrate Judge